UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                    Civil No. 13-2302(DSD/JSM)

Billy Sledge,

        Plaintiff,

v.                                                          **ORDER**

ConAgra Foods, Inc.,

        Defendant.


    Harvey B. Friedenson, Esq. and Friedenson Law Firm, LLC,
    265 Nathan Lane North, N205, Plymouth, MN 55441, counsel
    for plaintiff.

    Andrew J. Weissler, Esq., Josef S. Glynias, Esq. and
    Husch Blackwell, LLP, 190 Carondelet Plaza, Suite 600,
    St. Louis, MO 63105 and Steven R. Anderson, Esq.,
    Jennifer J. Kruckeberg, Esq. and Faegre Baker Daniels,
    LLP, 90 South Seventh Street, Suite 2200, Minneapolis, MN
    55402, counsel for defendant.


    This matter is before the court upon the motion to dismiss counts IV and V by defendant ConAgra Foods, Inc. (ConAgra). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

## BACKGROUND

    This employment dispute arises out of the February 2011 termination of plaintiff Billy Sledge by ConAgra. Sledge was employed by ConAgra as a production line worker in Lakeville, Minnesota from March 2009 until his termination. Compl. at 2.

ConAgra required line workers to leave a message on a company phone line if they were unable to work due to sickness or injury. Id. Failure to do so could result in the assignment of disciplinary points and lead to suspension or discharge. Id. If a production line was non-operational due to maintenance, line workers were contacted by a supervisor and could either be temporarily reassigned in the plant or elect to utilize an "off-day" and stay home. Id. at 3. Line workers who used an "off-day" were expected to return to ConAgra for their next regularly-scheduled shift. Id.

In April 2010, Sledge suffered a non-work-related injury to his Achilles tendon. Id. ¶ 9. Following the injury, ConAgra paid Sledge short-term disability benefits and restricted his duties until August 1, 2010. Id. On several occasions thereafter, Sledge was unable to work due to continuing discomfort and called ConAgra to report his absences. Id. at 4. ConAgra assigned Sledge disciplinary points for such absences. Id.

Sledge reinjured his Achilles tendon during a work shift on January 20, 2011. Id. ¶ 11. Sledge informed a supervisor of the injury and left work. Id. at 6. Sledge was unable to work his scheduled shift on February 1, 2011, and left a message on the ConAgra phone line. Id. at 7. On February 2 and 3, 2011, Sledge's line was scheduled for maintenance and Sledge did not go to the plant for his shifts. Id.

Sledge returned to work on February 6, 2011, for his next regularly-scheduled shift. Id. Sledge was not allowed to work and was instead directed to punch out and contact the Human Resources department the following day. Id. at 7-8. Sledge asked to submit Family Leave and Medical Act (FMLA) paperwork, which ConAgra declined to accept. Id. at 8. On February 6 and February 8, Sledge spoke with ConAgra human resources staff members. Id. Sledge told them that he believed he had been sent home as a result of race and disability discrimination. Id. Sledge was terminated for absenteeism on February 9, 2011. Id. at 9. ConAgra subsequently contested Sledge's entitlement to unemployment insurance and workers' compensation benefits, which Sledge was ultimately awarded. Id. Sledge's request for FMLA leave was denied in March 2011 following input from ConAgra. Id. at 10.

On August 22, 2013, Sledge filed this action, alleging (1) violations of Minnesota Statutes § 176.82, (2) the Americans with Disabilities Act (ADA), (3) the Minnesota Human Rights Act (MHRA), (4) the Minnesota Whistleblower Act (MWA), (5) Title VII, (6) 42 U.S.C. § 1981 and (7) a claim for wrongful discharge. ConAgra moves to dismiss the MWA and wrongful discharge claims.

**DISCUSSION**

**I.  Standard of Review**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level.  See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim.  Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6).  See Fed. R. Civ. P. 12(d).  The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings."  See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).  Sledge seeks to introduce

material outside the pleadings relating to disability benefits proceedings in November 2012, payments for rehabilitative and medical services and pending administrative claims. See Mem. Opp'n at 4. Such facts are neither matters of public record nor necessarily embraced by the complaint, however, and are not properly before the court.

**II. MWA**

Sledge argues that he was terminated and retaliated against in violation of the MWA. Specifically, Sledge argues that he was discharged for reporting suspected discriminatory practices. Sledge also argues that ConAgra retaliated against him by contesting his entitlement to unemployment insurance and worker's compensation benefits and by contributing to the denial of FMLA benefits. ConAgra argues that the MWA claim fails because (1) any claim based on post-termination conduct is barred because the instant dispute is governed by the pre-2013 amendment version of the MWA, which does not extend to such conduct and (2) any claim based on the termination is time-barred. The court agrees.

    **A.   Applicability to Post-Discharge Conduct**

Under the MWA, "[a]n employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because ... the employee ... in good faith, reports a violation ... of any ... law ... to an employer or

5

to any governmental body or law enforcement official." Minn. Stat. § 181.932, subdiv. 1.  The court analyzes MWA claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Chial v. Sprint/United Mgmt. Co., 569 F.3d 850, 854 (8th Cir. 2009).  At the first stage of the analysis, a plaintiff must establish a prima facie case by showing that his "conduct is statutorily protected, that an adverse employment action was directed at [him], and that a causal connection exists between the protected conduct and the adverse action."  Id. (citations omitted).  A 2013 amendment to the MWA relaxed the requirement that an adverse action occur during the period of employment and extended the MWA to "post-termination conduct by an employer" that "might dissuade a reasonable employee from making or supporting a report."  Minn. Stat. § 181.931, subdiv. 5; see also Lee v. Regents of the Univ. of Minn., 672 N.W.2d 366, 375 (Minn. Ct. App. 2003) (concluding that the pre-amendment MWA did not protect former employees).

Sledge argues that the 2013 amendment is retroactive, rendering the alleged retaliatory conduct by ConAgra after his termination remediable.  ConAgra responds that the amendment is prospective and does not apply to the instant dispute.  The court agrees.  Under Minnesota law, "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."  Minn. Stat. § 645.21.  Amendments are normally

6

presumed to change the law, and laws that substantively modify existing law apply only prospectively. See Braylock v. Jesson, 819 N.W.2d 585, 588 (Minn. 2012). However, "[a]lthough amendments are generally presumed to be prospective in effect, an amendment that merely clarifies the legislature's intent may be applied retroactively." State v. Lilleskov, 658 N.W.2d 904, 908 (Minn. Ct. App. 2003) (citation omitted). "Determining whether an amendment constitutes a clarification or modification of preexisting law" is a question of statutory interpretation requiring comparison of "the pre-amendment and post-amendment versions of a statute." Braylock, 819 N.W.2d at 588 (citations omitted).

Here, though legislators referred to some aspects of the 2013 amendments as clarifying in nature, they were silent as to the amendment at issue. See Hearing on S.F. 443 Before the S. Comm. on the Judiciary, 2013 Leg., 88th Sess. (Minn. 2013), available at http://www.senate.leg.state.mn.us/schedule/unofficial_action.php?ls=88&bill_type=SF&bill_number=0443&ss_number=0&ss_year=2013. As already explained, however, prior to the 2013 amendments, a plaintiff could not recover for post-discharge activities. See, e.g., Lee, 672 N.W.2d at 375. The amended statute, by contrast, expressly provides for a cause of action for post-termination conduct by an employer. See Minn. Stat. 181.931, subdiv. 5. Thus, the 2013 amendment relating to post-discharge conduct reflects a change in substantive law and does not apply retroactively.

7

Because the complaint concerns events occurring before the effective date of the amendment, the prior version of the MWA applies to the instant dispute.  As a result, the allegedly violative post-discharge activities cannot independently sustain an MWA claim.

### B.   Statute of Limitations

ConAgra argues that the remaining portion of the MWA claim based on Sledge's termination is time-barred.  MWA claims are constrained by a two-year statute of limitations.  See Minn. Stat. § 541.07(1); Larson v. New Richland Care Ctr., 538 N.W.2d 915, 921 (Minn. Ct. App. 1995), abrogated on other grounds by Gordon v. Microsoft Corp., 645 N.W.2d 393 (Minn. 2002).  Sledge responds that the MWA claim is nevertheless timely because of the application of the continuing violation theory.  According to the continuing violation theory, which typically is applied in the context of Title VII claims, "although one incident may not support a claim, the claim may be supported by a series of incidents that occur over a period of time."  Betz v. Chertoff, 578 F.3d 929, 937-38 (8th Cir. 2009) (citation omitted).  That is, where challenged acts are part of a continuing violation, only one such act must fall within the limitations period.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).  Discrete acts, by contrast, "are not actionable if time barred, even when they are related to the acts alleged in timely filed charges."  Betz, 578 F.3d at 938 (citation

8

and internal quotation marks omitted). The Minnesota Supreme Court is silent as to whether the continuing violation doctrine is applicable in the MWA context, though lower courts have considered the doctrine. See, e.g., Barrott v. Cnty. of Anoka, No. C5-96-2227, 1997 WL 206810, at *3 (Minn. Ct. App. Apr. 29, 1997).

Here, even if the continuing violation doctrine applies to MWA claims, the only post-termination conduct that Sledge pleads is that ConAgra contested his entitlement to various forms of benefits. Such facts, however, are not "sufficient ... to determine whether the continuing violation doctrine should toll the statute of limitations, because [the] complaint neither indicates a systematic repetition of the same policy nor constitutes a sufficiently integrated pattern to form, in effect, a single discriminatory act." Id. (citation and internal quotation marks omitted). Further, the acts that Sledge challenges - his termination and ConAgra's opposition to his entitlement to benefits - are discrete and do not support application of the continuing violation doctrine to the instant dispute. See, e.g., Hutson v. Wells Dairy, Inc., 578 F.3d 823, 826 (8th Cir. 2009) ("A termination is a discrete act, not a continuing violation." (citation omitted)); Ford v. Minneapolis Pub. Schs., No. 10-3142, 2012 WL 5258668, at *1 (D. Minn. Oct. 24, 2012) (observing that alleged opposition by employer to employee's entitlement to benefits constituted a discrete act). "Because the actions

9

complained of here constitute a series of discrete actions, ... the doctrine of continuing violations does not apply." Eichinger v. Imation Corp., No. A05-1133, 2006 WL 852123, at *7 (Minn. Ct. App. Apr. 4, 2006). Thus, even if the continuing violation doctrine applies to MWA claims, it is not applicable to the instant dispute. Therefore, the whistleblower claim accrued when Sledge was terminated on February 9, 2011. Under Minnesota Rule of Civil Procedure 3.01, an action is commenced upon service.[1] ConAgra was served on August 23, 2013, more than two years after accrual of the action. See ECF No. 3. As a result, the MWA claim is time-barred, and dismissal is warranted.

## III. Wrongful Discharge

Sledge next argues a claim for wrongful discharge. Specifically, Sledge argues that he "had a good faith belief" that various conduct by ConAgra, including his termination, constituted "illegal conduct in violation of state and federal laws." Compl. ¶ 24. ConAgra argues that the wrongful discharge claim fails because Sledge does not allege that he refused to violate any law, but only that he believed that ConAgra did so.[2] The court agrees.

---

[1] "[S]tate commencement rules apply because they are part and parcel of the statute of limitations." Larsen v. Mayo Med. Ctr., 218 F.3d 863, 867 (8th Cir. 2000) (citation and internal quotation marks omitted).

[2] ConAgra also argues that the claim for wrongful discharge is time-barred. Because the court finds that the claim fails on the merits, it need not reach this argument.

In Minnesota, "[u]nless otherwise agreed between the parties, the employment relationship is at-will." Borgersen v. Cardiovascular Sys., Inc., 729 N.W.2d 619, 625 (Minn. Ct. App. 2007) (citation and internal quotation marks omitted). As a result, "the relationship can be terminated for any reason or for no reason at all." Nelson v. Productive Alts., Inc., 715 N.W.2d 452, 454 (Minn. 2006) (citation omitted). Generally, an at-will employee has "no claim for wrongful termination or breach of an employment contract once discharged." Bolander v. Bolander, 703 N.W.2d 529, 545 (Minn. Ct. App. 2005) (citation omitted). The Minnesota Supreme Court, however, has articulated a general exception to the at-will doctrine, when an "employee is discharged for refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law." Phipps v. Clark Oil & Refining Corp., 408 N.W.2d 569, 571 (Minn. 1987).

Here, Sledge does not allege that his termination was the result of refusing to participate in an unlawful activity. Instead, his wrongful discharge claim is based on reporting alleged race and disability discrimination. A claim for wrongful discharge, however, "is limited to a *refusal to participate* in an activity that violates a law or promulgated regulation or rule." Nelson v. Productive Alts., Inc., 696 N.W.2d 841, 846 (Minn. Ct. App. 2005) (emphasis added); see also Dukowitz v. Hannon Sec.

11

Servs., 841 N.W.2d 147, 151 (Minn. 2014) ("Because [the plaintiff] has not alleged that her termination resulted from a refusal to commit an act that she, in good faith, believed to be illegal, she has not stated a cause of action" for wrongful discharge).  As a result, dismissal of the wrongful discharge claim is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss counts IV and V [ECF No. 14] is granted.


Dated:  June 9, 2014

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court